IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

IRIS BART-WILLIAMS,            )
                                             )
        Plaintiff,           )
                                             )      Case No. 1:16-cv-1338-GBL-TCB
        v.                 )
                                             )
EXXON MOBIL CORPORATION   )
                                             )
        Defendant.       )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant ExxonMobil Corporation ("ExxonMobil")'s Motion for Summary Judgment (Dkt. 13), pursuant to Federal Rule of Civil Procedure 56. Plaintiff Iris Bart-Williams filed a Complaint against ExxonMobil alleging: race discrimination under 42 U.S.C. § 1981 ("Section 1981") (Count I); retaliation under Section 1981 (Count II); discrimination on the basis of race, national origin, and sex, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count III); retaliation under Title VII (Count IV); age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count V); and retaliation under the ADEA (Count VI). There are five issues before the Court.

The first issue is whether certain allegations that form the basis of Plaintiff's Title VII, ADEA, and Section 1981 claims are statutorily time-barred. The Court GRANTS Defendant's Motion for Summary Judgment on this issue for two reasons. First, with respect to her Title VII and ADEA claims, Plaintiff failed to file EEOC charges within 300 days from the occurrence of the allegedly discriminatory events. Second, to the extent that her Section 1981 race

discrimination and retaliation claims are premised on conduct that occurred before October 24, 2012, they must be dismissed as untimely.

The second issue is whether Plaintiff demonstrated a genuine dispute of material fact regarding a *prima facie* case of discrimination under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Court GRANTS Defendant's Motion for Summary Judgment on this issue because Plaintiff has failed to demonstrate a genuine dispute of material fact as to whether (1) she suffered an adverse employment action, excluding her termination, (2) she met ExxonMobil's legitimate performance expectations, or (3) she was terminated under circumstances giving rise to an inference of unlawful discrimination.

The third issue—assuming *arguendo* that Plaintiff established a *prima facie* case for discrimination—is whether Plaintiff, when faced with Defendant's legitimate nondiscriminatory reasons for termination, has demonstrated a genuine dispute of material fact as to whether ExxonMobil's actions were a pretext for discrimination. The Court GRANTS Defendant's Motion for Summary Judgment on this issue because Plaintiff has failed to demonstrate a genuine dispute of material fact as to whether ExxonMobil's stated reasons for termination were not its true reasons, but were a pretext for discrimination.

The fourth issue is whether Plaintiff has demonstrated a genuine dispute of fact as to "but for" causation on her ADEA claim. The Court GRANTS Defendant's Motion for Summary Judgment on this issue because Plaintiff has not presented any evidence demonstrating a genuine dispute of material fact as to age-based discrimination.

The fifth and final issue involves Plaintiff's retaliation claims, and whether she has demonstrated a genuine dispute of material fact concerning her purported protected activity as the "but for" cause of her termination. The Court GRANTS Defendant's Motion for Summary

Judgment with respect to Plaintiff's retaliation claims because Plaintiff has failed to demonstrate a genuine dispute of fact for trial concerning her purported protected activity as the "but for" cause of her termination.

# I. BACKGROUND

## A. Plaintiff's Experience in Fuels Marketing

Plaintiff is an African female from Sierra Leone, and was 59 years old at the time the Complaint was filed. (Dkt. 1 ¶ 1). Plaintiff began her employment with ExxonMobil in March 2006, and was hired as a paralegal in the company's Fairfax, Virginia office. (Dkt. 14-25, Deposition of Iris Bart-Williams ("Bart-Williams Dep.") 25:6-12). Throughout her employment, Plaintiff was an "at will" employee. (*Id.* at 38:13-39:5). During the first several years of her employment, Plaintiff was assigned to the Fuels Marketing Section of ExxonMobil's Downstream Law Department. (*Id.* at 27:10-16). The Fuels Marketing Section was responsible for retailing and marketing fuel and petroleum products, as well as convenience items. (Dkt. 14-26, Declaration of Doug Neagli ("Neagli Dep.") 12:3-17).

In her role supporting attorneys within the Fuels Marketing Section, Plaintiff mainly worked on real estate and asset management issues concerning ExxonMobil's company-owned gas stations. (Bart-Williams Dep. at 27:17-28:17). From 2006 to 2011, Plaintiff assisted attorneys who focused on real estate law and asset management, including Don Fullerton, an outside counsel who contracted with ExxonMobil to perform certain legal work in the real estate context. (*Id.* at 26:11-22; Neagli Dep. 24:12-17).

In July 2007, Doug Neagli—a 54 year white male—joined the Fuels Marketing Section as Assistant Chief Attorney, and became Chief Attorney of the Section in 2008. (Neagli Dep. 19:3-20). One of Mr. Neagli's responsibilities was coordinating feedback for paralegals and

attorneys as part of ExxonMobil's Performance Assessment and Development Process ("PADP"). Relatedly, paralegal coordinator Dara Behan also played a role in the professional development process. (Dkt. 14-28, Deposition of Dara Behan ("Behan Dep.") 8:14-9:2). Ms. Behan is a 43 year old Filipino female. (Dkt. 14-2, Declaration of Austyn E. Johnson ("Johnson Decl.") ¶ 5).

During the early years of Plaintiff's employment with ExxonMobil, she received generally positive feedback from attorneys and supervisors based on her work on real estate matters, including positive feedback from Mr. Neagli, as expressed on Plaintiff's early EADS forms. (Dkt. 14-3, 2008 Employment Assessment and Development Summary ("EADS"); Bart-Williams Dep. 51:17-52:7, 70:3-18, 74:21-75:5; Dkt. 14-4, 2010 EADS; Dkt. 14-5, 2011 EADS).

**B. ExxonMobil's Performance Assessment and Development Process**

ExxonMobil's PADP is a detailed, multi-step process that seeks to maintain an environment of continuous performance improvement for every employee. (Johnson Decl. ¶ 5; Neagli Dep. 60:12-65:1). Each PADP performance period runs from April 1 of one year through March 31 of the next year. (Johnson Decl. ¶ 5). At the beginning of each period, all employees draft an Employee Assessment and Development Summary ("EADS"), in which they list their contributions and self-assess their work from the prior year. (*Id.*)

In addition to an employee's self-assessment, supervisors solicit information regarding the employee's performance from other individuals, known as "knowledgeable others." (*Id.*) In the Law Department, paralegals can receive input from business line clients (who are external to the Law Department) that the paralegal may identify, but supervisors also receive feedback on a paralegal's performance from the attorneys whom the paralegals are supporting. (*Id.*) Supervisors are entitled to give different weight to the various feedback received from the

different individuals. (*Id.*) Supervisors then take the employee's self - assessment, their own assessment of the employee, and any feedback from knowledgeable others to update the EADS. (Johnson Decl. ¶ 5; Neagli Dep. 63:5-65:1).

Furthermore, in addition to EADS feedback, employees are ranked within their particular rank group. (Johnson Decl. ¶ 6). An employee's ranking represents how he or she is performing relative to his or her peers. (*Id.*)

## C. Plaintiff is Reassigned to the Lubricants and Petroleum Section

From 2008 to 2012, ExxonMobil divested its ownership interests in company- owned retail and gas stations across the country. (Bart-Williams Dep. 65:12-20). As a result of the divestment, the need for paralegal support in the asset management and real estate context decreased. (Neagli Dep. 42:3-14).

During the discussion regarding her 2011 EADS, Plaintiff's supervisors informed her that it would be necessary to be "flexible" moving forward because of the divestment of retail stations (also known as the "Business Improvement" process), which was causing changes in the need for legal services in the Fuels Marketing Section. (2011 EADS; Bart-Williams Dep. 65:12-66:21). Plaintiff stated that she was "indeed flexible and looking forward to any new opportunities." (2011 EADS).

In late 2011, Plaintiff was reassigned from the Fuels Marketing Section to the Lubricants & Petroleum Specialties Section (the "Lubes Section"). (Bart-Williams Dep. 28:21-29:5). The Lubes Section marketed finished lubricants, basestocks, and specialty products such as waxes. (Neagli Dep. 34:14-20). ExxonMobil reassigned Plaintiff from the Fuels Marketing Section to the Lubes Section because of decreasing workloads in the Fuels Marketing Section related to ExxonMobil's divestment of retail station properties. In addition, there was a need for

paralegal services in the Lubes Section, in part because another paralegal was scheduled to be on maternity leave for approximately six months. (Bart-Williams Dep. 28:21-29:8).

The Fuels Marketing Section and the Lubes Section were both in the Downstream Law Department and were both located in the same office area. (Neagli Dep. 43:1-20). Paralegals frequently moved across the Fuels Marketing Section, the Lubes Section, and other business lines within the Downstream Law Department to do tasks. (*Id.*) All ExxonMobil paralegals are expected to be able to perform assignments and provide support throughout the law department, regardless of their specific assigned sections at any given time. (*See id.*)

## D. Plaintiff's Work Performance Begins to Decline

Soon after Plaintiff joined the Lubes Section, her co-workers and supervisors began to recognize deficiencies in her performance. Plaintiff testified that shortly after her reassignment, Lubes Section Chief Attorney Jo Anne Murphy, a 59 year old white female, and attorney Sensimone Williams, a 46 year old African-American female, began "commenting that my performance was not up to par." (Bart-Williams Dep. 83:3-13; Dkt. 14-6, 2013 Performance Improvement Letter; Bart-Williams Dep. 39:12-14, 42:12-43:9). For example, Plaintiff had difficulty with basic tasks in both Microsoft Excel and Word. (Behan Dep. 53:7-12).

Ms. Murphy specifically noted that while Plaintiff's performance in the Fuels Marketing Section during the first half of the assessment period had been strong, her work following her reassignment to the Lubes Section needed to improve. (Dkt. 14-7, 2012 EADS ("[S]he still has a lot of work to do to proactively climb the learning curve if she is to master her new [Lubricants & Specialties] portfolio."); Bart-Williams Dep. 92:16-21). This is notable because employees of the Law Department regularly transfer between sections and are expected to have the skills needed to succeed, even if the subject matter of the new assignment is different. (Neagli Dep.

43:10-20, 57:9-21). In an effort to help Plaintiff improve her performance, Ms. Murphy began meeting with Plaintiff on a regular basis for informal coaching and counseling sessions. (*See* Dkt. 14-6, 2013 Performance Improvement Letter).

## E. Plaintiff's Initial "Box Review" Work Assignment

In June 2012, Plaintiff was assigned to work on the Lubes Record Management Guideline Box Review Project. (Bart-Williams Dep. 105:12-106:1). For this project, attorneys performed substantive reviews of various documents and provided the information to Plaintiff, who was supposed to pull the Lubes Section information together for Robert Lee, the records administrator, who was coordinating the review across the entire Downstream Law Department. (Behan Dep. 37:4-38:4). Plaintiff struggled to complete the project in a timely and organized fashion. Plaintiff's supervisor stated that Plaintiff "was disorganized and lacked the basic computer skills to update Excel spreadsheets to efficiently track the boxes." (Dkt. 14-8, 2013 EADS; Bart-Williams. Dep. 141:2- 6, 142:2-6). In an email to paralegal coordinator Dara Behan, Attorney Sensimone Williams requested that an alternate paralegal be assigned to the project to ensure that the box review was completed in a timely manner. (Dkt. 14-16, Declaration of Dara Behan ("Behan Decl.") ¶ 3; Dkt. 14-17)

## F. Paralegal Coordinator Sends Plaintiff Performance Improvement Letter

Because Plaintiff's performance continued to decline, on February 26, 2013, Paralegal Coordinator Dara Behan sent Plaintiff a performance improvement letter. (Dkt. 14-6, 2013 Performance Improvement Letter; Bart-Williams Dep. 43:2-4). Ms. Behan informed Plaintiff that her performance level declined during the previous year. (Dkt. 14-6). Ms. Behan referenced negative feedback from attorneys and law department staff who had worked with Plaintiff. (*Id.*)

The letter also specifically highlighted areas of performance on which Plaintiff was encouraged to focus as part of the performance improvement process. (*Id.*)

By this time, Kelly Scoffield, a 60 year old white male, had joined the Downstream Law Department as an Assistant Chief Attorney. (Johnson Decl. ¶ 16). In this role, Mr. Scoffield served as Plaintiff's supervisor with respect to performance evaluations. As the months ensued, Mr. Scoffield and Ms. Behan met with Plaintiff on numerous occasions for informal coaching and counseling sessions. (Bart-Williams Dep. 124:16-125:4). Plaintiff did not improve her performance, however. (Neagli Dep. 20:6-22; Dkt. 14-8, 2013 EADS).

### G. Plaintiff Returns to Asset Management Work But Continues to Struggle

In 2013, ExxonMobil assigned Plaintiff to resume supporting attorneys who worked on asset management. (Bart-Williams Dep. 36:13-15). During this period, Noreen Tama, a 56 year old white female and an attorney with ExxonMobil, was in charge of ExxonMobil's asset management portfolio. (Johnson Decl. ¶ 17; Dkt. 14-27, Deposition of Noreen Tama ("Tama Dep.") 47:21-48:1). Ms. Tama oversaw all company asset management work, including work done by outside counsel such as Don Fullerton. (Tama Dep. 48:2-14).

Ms. Tama also observed several performance deficiencies in Plaintiff. For example, in feedback for the April 1, 2013 through March 31, 2014 assessment period, Ms. Tama stated that Plaintiff "makes more obvious mistakes and errors" than other paralegals. (Johnson Decl. ¶ 45; Dkt. 14-9, 2013-2014 Client Input Form). Ms. Tama further stated that Plaintiff "is not self-motivated and does not look for ways to make herself helpful," and further that she did not seem "particularly knowledgeable about the company despite having been here for 8 years." (Dkt. 14-9).

On September 16, 2013 as part of the Performance Assessment and Development Process ("PADP"), Mr. Scoffield and Ms. Behan met with Plaintiff to discuss her 2013 EADS evaluation. (Dkt. 14-8). In Mr. Scoffield's written summary of the September 16, 2013 meeting, he stated:

> On September 16, 2013, Dara Behan and I reviewed with Iris her client feedback and EADS comments. One client gave her a low rating and the others chose not to provide any comments/comparison. We told Iris that compared to other paralegals, her feedback was weak. As we had several times during the ranking cycle, we told her that the overall trend in her performance is not good and was not improving. We told her that she had fallen in the rank group, and was now in the bottom third. We emphasized that she needed better client feedback, but more importantly she needed to improve the input she gets from the attorneys she supports. We indicated that without a material change in her performance, it may be in her interests to think about employment elsewhere. She said she understood.

(*Id.*)

## H. Plaintiff is Placed on a Performance Improvement Plan

Plaintiff was placed on a performance improvement plan ("PIP") on March 28, 2014, because her performance had continued to fall below expectations. (Bart-Williams Dep. 208:7-11). The purpose of a PIP is to improve an employee's performance. (Johnson Decl. ¶ 7). At this point in time, the Fuels Marketing Section and Lubes Section had merged to form one section, led by Chief Attorney Doug Neagli (Neagli Dep. 10:18-11:10). Mr. Neagli provided Plaintiff with a written letter detailing the reasons for her placement on the PIP and also provided structured feedback regarding areas for improvement. (Dkt. 14-10, 2014 PIP; Bart-Williams Dep. 43:12-15, 49:18-50:4).

The written PIP informed Plaintiff that her performance would be monitored over a six-month period, and that she would receive bi-weekly coaching and counseling sessions. (*Id.*) The PIP further advised Plaintiff that if, at the conclusion of the six-month period, her performance

continued to fall below the expected performance level, then "additional actions will be considered, which may include termination." (*Id.*) Plaintiff was aware that a failure to improve her performance might result in termination. (Pl. Dep. 201:9-13).

As part of the PIP, Plaintiff was assigned to coordinate and manage the Downstream Legacy Box Review Project. (Dkt. 14-10). This project again involved attorneys reviewing documents for compliance with the company's record retention requirements and Plaintiff working with records administrator Robert Lee, a 69 year old Filipino male, to coordinate the responses. (Neagli Dep. 143:8-144:8). Once again, Plaintiff's supervisors and co-workers stated that Plaintiff's performance on this second box review project was deficient. (Dkt. 14-11, 2014 EADS; Bart-Williams Dep. 248:10-13, 251:15-252:1). Mr. Lee commented that Plaintiff "demonstrated her lack of skills in planning, implementing and managing a project." (Dkt. 14-9, 2013-2014 Client Input Form). Likewise, Mr. Neagli, who directly supervised Plaintiff's performance on the project, testified that "her performance on the box review project was deficient." (Neagli Dep. 148:9-10).

Plaintiff also struggled in other areas. For example, in a June 11, 2014 email to Dara Behan, attorney Linda Fannin, a 61 year old African-American female, stated as follows: "During my discussion with Iris, it became clear that independent work is a challenge for her. Iris needs close supervision with hard deadlines; otherwise, her assignments may not get done." (Dkt. 14-18, June 11, 2014 email; Behan Decl. ¶ 4).

**I. Plaintiff's Performance Improvement Plan is Suspended**

On July 2, 2014, Plaintiff sent a letter, along with 23 attachments, to ExxonMobil's then Chairman and CEO Rex Tillerson. (Dkt. 14-19; Bart-Williams Dep. 76:20-77:9). In that letter, Plaintiff complained generally about her employment with ExxonMobil. (*Id.*). In response,

ExxonMobil initiated an internal investigation. (Johnson Decl. ¶ 9; Bart-Williams Dep. 233:17-19). Plaintiff's PIP was suspended during the pendency of the internal investigation. (Johnson Decl. ¶ 9).

On August 15, 2014, Plaintiff was interviewed as part of ExxonMobil's internal investigation. (*Id.* ¶ 10; Dkt. 14-12, Aug. 15, 2014 Interview Summary; Bart-Williams Dep. 56:17-57:22). When asked to describe the type of discrimination she allegedly had experienced, Plaintiff said only that she "felt harassed by the general way she . . . had been treated." (Bart-Williams Dep. 234:11-21). When asked specifically if she felt that she had been discriminated against because of her race, sex, age, or national origin, Plaintiff replied that she would respond to that question in writing. (Bart-Williams Dep. 238:14-20). That written answer came on September 10, 2014, when Plaintiff sent Human Resources Advisor Meghan Hasson a written supplement to the statements that Plaintiff provided during her interview. (Dkt. 14-20, Sept. 10, 2014 Interview Supplement; Bart-Williams Dep. 189:11- 191:10). However, plaintiff did not provide direct allegations of discrimination or harassment, and instead stated: "The reasons for egregious harassment over a long period has nothing to do with performance but *some* element of discrimination." (Bart-Williams Dep. 241:21-242:10 (emphasis added)).

In her written supplement, Plaintiff also stated:

> I have heard that a 55 or older male Caucasian paralegal and an over 55 year old black American female attorney were apparently forced to retire even though they wanted to stay on with the company and move to Houston. If their forced retirement was based on job performance pretext, the question is whether this is a pattern that is being used for not relocating employees age 55 and over? In my case, this does makes [sic] it clear that I am not only an African-born black American female, age 57, but since I am not retirement eligible, harassment for a resignation has been the chosen path.

(Dkt. 14-20)[1]. Importantly, Plaintiff did not identify whom she "heard" this information from, or which employees she heard have been "forced to retire." (Bart-Williams Dep. 242:15- 243:6).

On October 31, 2014, Ms. Hasson informed Plaintiff that the internal investigation had found there was no violation of ExxonMobil's policies regarding harassment or Equal Employment Opportunity. (Dkt. 14-13, Oct. 31, 2014 Notice of Outcome of Investigation; Bart-Williams Dep. 245:12-15, 247:12-18). Thus, the investigation was closed and Plaintiff's PIP was reinstated. (Dkt. 14-13).

## J. Plaintiff's Performance Improvement Plan Resumes

On November 7, 2014, as part of ExxonMobil's Performance Assessment and Development Process ("PADP"), Doug Neagli and Dara Behan met with Plaintiff to review her 2014 EADS form and the corresponding feedback she had received from attorneys and co-workers. (Dkt. 14-11, 2014 EADS). The discussion summary from that meeting provides as follows:

> I read to Iris the supervisor comments on her EADS. I told her that based on my personal experience working with her, and our collected assessment of her work, her work performance is deficient, which is the reason we put her on a Performance Improvement Plan (PIP) back in March. I noticed Iris was smiling and asked if she had any comments and she said, "No." I then asked if she wanted me to review her client feedback and she said, "Yes." I read to her the entire client feedback and advised her of her ranking—specifically, I told Iris that she was at the bottom of the [Fuels & Lubricants] law Paralegal list, the bottom of the [Downstream] paralegal list and thus in the bottom 10% of the rank group with an RGP of zero (0). Iris asked what RGP meant and we told her it meant "rank group percentile." Based on her ranking, I also told her that she needs to step up her performance since her performance has not improved.

---

[1] In 2012, ExxonMobil announced that in 2015 it would be relocating its Fairfax, Virginia offices to the greater Houston area. (Johnson Decl. ¶ 4). Neither age nor race/national origin nor any protected category played any role in the company's decision as to who to transfer to Houston. (Id. ¶ 4).

(*Id.*). At the same time, Plaintiff's colleagues Michele Lewis and Kanithea Powell – both African-American women over the ages of 50 and 40, respectively – were at the top of the rank list for paralegals in the Downstream Law Department. (Johnson Decl. ¶¶ 26-27).

Mr. Scoffield and Ms. Behan, in their January 2015 final assessment of Plaintiff's performance prepared following the conclusion of the performance improvement period, stated that Plaintiff "lacks the ability to fully comprehend assignments even after being provided direction and assistance in planning and prioritizing her work," and that Plaintiff was unable to "manage her time efficiently to complete routine paralegal tasks." (Dkt. 14-14). ExxonMobil terminated Plaintiff's employment on March 25, 2015. (Neagli Dep. 20:6-14; Dkt. 14-15; Bart-Williams Dep. 254:15-255:3)

### K. Plaintiff Commences Litigation Against ExxonMobil

On October 24, 2016, Plaintiff filed a complaint against Defendant ExxonMobil. Plaintiff alleges: race discrimination under 42 U.S.C. § 1981 (Count I); retaliation under 42 U.S.C. § 1981 (Count II); discrimination under the Title VII (Count III); retaliation under Title VII (Count IV); age discrimination under the ADEA (Count V); and retaliation under the ADEA (Count VI). Defendant filed a Motion for Summary Judgment on June 9, 2017 (Dkt. 13). Plaintiff filed an opposition brief on June 23, 2017 (Dkt. 22), and Defendant filed a reply brief on June 29, 2017 (Dkt. 23).

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*; *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (citations omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va.*, 718 F.3d at 313 (citation omitted).

If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2); *see also* Local Civ. R. 56(b) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

## B. Analysis

The Court GRANTS Defendant's Motion for Summary Judgment for five reasons. First, Plaintiff's Title VII, ADEA, and Section 1981 claims are statutorily time-barred. Second, Plaintiff has failed to demonstrate a genuine dispute of material fact for trial regarding a *prima facie* case of discrimination under the familiar burden-shifting framework of *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973). Third, Plaintiff has failed to demonstrate a genuine dispute of material fact for trial that Defendant's reasons for termination were a pretext for discrimination. Fourth, Plaintiff has not demonstrated a genuine dispute of material fact for trial as to "but for" causation on her ADEA claim. Fifth, with respect to Plaintiff's retaliation claims, Plaintiff has failed to demonstrate a genuine dispute of material fact for trial that her purported protected activity was the "but for" cause of her termination.

### 1. Time-Barred Allegations

The Court GRANTS Defendant's Motion for Summary Judgment because certain portions of Plaintiff's Title VII, ADEA, and Section 1981 claims are time-barred.

Under both Title VII and the ADEA, an individual who seeks to raise claims of discrimination must file a charge with the EEOC within 300 days "from the occurrence of an alleged discriminatory event." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Charges filed beyond that deadline are time-barred. *Id.* Here, Plaintiff filed her charge with the EEOC on September 8, 2015. Thus, any allegations concerning conduct that took place prior to November 12, 2014 are beyond the 300-day statute of limitations and are time-barred. *Id.* These include Plaintiff's allegations regarding ExxonMobil's refusal to promote her to an attorney, her transfer from the Fuels Marketing Section to the Lubes Section, her alleged lack of training in Lubes, her poor performance feedback, her placement on a PIP, and the coaching and counseling sessions she received prior to November 12, 2014. Accordingly, to the extent Plaintiff's Title VII and ADEA claims rely on untimely allegations, these claims must be dismissed.

Moreover, Plaintiff's Section 1981 claims for race discrimination and retaliation are also time-barred. The statute of limitations for Section 1981 is four years. *See Macon v. DuPont*, No.

3:10CV260-HEH, 2011 WL 166625, at \*2 (E.D. Va. Jan. 18, 2011) (citing *Jones v. R.R.Donnelley & Sons, Co.*, 541 U.S. 369, 382 (2004)). Here, Plaintiff filed her lawsuit on October 24, 2016. Thus, Plaintiff's allegations regarding her failure to be promoted to an attorney, her transfer, her alleged lack of training when transferred, and any other allegations concerning conduct that occurred prior to October 24, 2012, are time-barred and must be dismissed.

Because certain portions of Plaintiff's Title VII, ADEA, and Section 1981 claims are time barred, the Court GRANTS Defendant's Motion for Summary Judgment with respect to those portions of the claims.

### 2. *Prima Facie* Case of Discrimination

The Court GRANTS Defendant's Motion for Summary Judgment because Plaintiff failed to demonstrate a genuine dispute of material fact for trial regarding a *prima facie* case of discrimination under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The Court must analyze Plaintiff's claims under *McDonnell Douglas* because (1) Plaintiff has not produced any direct or indirect evidence of discrimination, and (2) the *McDonnell Douglas* framework applies to Title VII, ADEA, and Section 1981 claims. *See Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015) (citing *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015)).

In *McDonnell Douglas*, the Supreme Court established a three-step burden-shifting framework for discrimination cases where there is no direct or indirect evidence of such. *Foster*, 787 F.3d at 249 (citing *McDonnell Douglas*, 411 U.S. at 792). For claims of discrimination, the *McDonnell Douglas* framework begins by placing the burden on the plaintiff to demonstrate a

*prima facie* case, the elements of which "vary depending upon the nature of the case." *Briggs v. Waters*, 484 F. Supp. 2d 466, 477 (E.D. Va. 2007). To avoid summary judgment, plaintiff must show that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was performing at a level that met her employer's legitimate expectations, and (4) she was terminated under circumstances giving rise to an inference of unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007); *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998). Here, Plaintiff is a member of a protected class, but she cannot satisfy the remaining requirements.

### a. Second Element: Adverse Employment Action

As an initial matter, the only action that may be considered an adverse employment action for purposes of this analysis is Plaintiff's discharge on March 25, 2015.

The majority of the allegations in Plaintiff's Complaint relate to conduct that does not constitute an adverse employment action. For example, Plaintiff alleges that she was discriminated against when she was transferred from one section to another (Bart-Williams Dep. 81:20-82:1), when she was required to attend "constant meetings" regarding her performance (*id.* at 242:3-10), and when her performance was unfairly scrutinized (*id.* at 233:6-12). However, a "transfer" or "reassignment" may qualify as an adverse employment action only "if the plaintiff can show that the reassignment had some significant detrimental effect." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999). Likewise, the Fourth Circuit has held that placement on a PIP is not a qualifying adverse employment action. *See, e.g., Jones*, 629 F. App'x at 468. "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the

old position." *Boone*, 178 F.3d at 256–57. Here, Plaintiff has not alleged that her reassignment resulted in any such change. Moreover, Plaintiff alleges that she received an *increase* in compensation after her transfer in 2012. (Compl. ¶37).

Plaintiff's contention that ExxonMobil discriminated against her by not providing her with adequate training following her reassignment is similarly without merit. "To create a genuine dispute of material fact for trial a *prima facie* case of discriminatory denial of training, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 649–50 (4th Cir. 2002). Plaintiff cannot meet this test because no formal training existed. (Behan Dep. 26:21-29:12). As Mr. Neagli testified, paralegals employed at ExxonMobil are expected to succeed in any section of the law department, notwithstanding the specific legal focus of the attorneys they support. (Neagli Dep. 43:1-20). This is particularly true in the Downstream Law Department where, as Mr. Neagli stated, "paralegals frequently moved across fuels marketing, lubricants and specialties, and other business lines within the downstream to do tasks." (*Id.*)

ExxonMobil expects paralegals to perform at an adequate level regardless of their specific assignments. Relatedly, Plaintiff's allegation that she should have been promoted to an attorney position within ExxonMobil is inapposite even if it had been timely. Plaintiff was not hired as an attorney but as a paralegal, and she was told on multiple occasions that she would not be promoted to an attorney. (Bart-Williams Dep. 50:5-51:1; Dkt. 14-3, "2008 EADS"). Plaintiff also fails to demonstrate that she was qualified for an attorney position, or that there were any such positions available. Accordingly, she cannot base her discrimination claim on a "failure to

promote theory." *See Evans*, 80 F.3d at 959–60 (to properly state a failure to promote claim, plaintiff must show that her employer had an open position for which she was qualified and that she was rejected under circumstances giving rise to an inference of discrimination).

Consequently, other than her employment termination, Plaintiff has not identified any adverse actions that would satisfy the second element of a *prima facie* claim.

### b. Third Element: Meeting ExxonMobil's Performance Expectations

Plaintiff has failed to demonstrate a genuine dispute of material fact for trial regarding her meeting ExxonMobil's legitimate performance expectations.

Plaintiff's 2012 EADS form states that while Plaintiff performed well during the portion of 2011 that she spent in the Fuels Marketing Section, she had "a lot of work to do to proactively climb the learning curve" in the Lubes Section. (Dkt. 14-7). In 2013, Plaintiff's EADS form indicated that her performance over the previous year had been weak compared to other paralegals. (Dkt. 14-8). In 2014, Plaintiff was informed that her performance continued to decline. (Dkt. 14-10). Moreover, later in 2014, Plaintiff was informed that her performance had fallen such that her internal ExxonMobil ranking, relative to her peers, was at the very bottom and within a rank group percentile of 0%. (Dkt. 14-11).

Plaintiff's self-serving testimony regarding her own job performance "cannot [demonstrate] a genuine issue as to whether [the plaintiff] was meeting [the employer's] expectations." *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *see also Evans*, 80 F.3d at 960-61 ("'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff.") (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)).

Further, to the extent that Plaintiff claims she received positive feedback from Don Fullerton or others external to the Law Department, such feedback is irrelevant. It is the opinion

of Plaintiff's supervisors, with whom she worked on a regular basis, that controls whether she is satisfactorily meeting expectations. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) ("The alleged opinions of Hawkins' co-workers as to the quality of her work are similarly 'close to irrelevant.'") (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)); *Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511, 523 (E.D. Va. 2013) ("It is the employer's point of view that controls whether the employee is satisfactorily meeting expectations, so evidence demonstrating a plaintiff's or third party's interpretation is not relevant toward establishing this *prima facie* element.")

In support of her reliance on isolated feedback to show that she performed a satisfactory level, Plaintiff relies on *Tillery v. Piedmont Airlines, Inc.*, No. 115CV01256LMBIDD, 2016 WL 5334673 (E.D. Va. Sept. 22, 2016), *appeal docketed*, No. 16-2225 (4th Cir. Oct. 24, 2016). As Plaintiff notes, Judge Brinkema's decision in *Tillery* included a discussion about an email that a manager (Louden) sent one month prior to terminating an employee (Tillery), in which Louden referred to Tillery as a "seasoned and competent employee." *Tillery*, 2016 WL 5334673, at *8. In an attempt to analogize this case to *Tillery*, however, Plaintiff omits a salient detail: Louden, the manager in *Tillery*, was expressly recognized by the court as being a "decision maker" for purposes of Tillery's termination. *See id.* at *5. Therefore, Louden's opinion of Tillery's performance was pertinent to a determination of whether Tillery was meeting his employer's legitimate expectations. *See id.* at *8.

*Tillery* is wholly consistent with Fourth Circuit precedent, which holds that feedback from coworkers and third parties is irrelevant if those individuals were not the decision makers in an employee's termination. Furthermore, even after considering the decision maker's email, the court in *Tillery* granted summary judgment in the defendant's favor, rejecting the plaintiff's

claims of discrimination under the ADEA, Title VII, and Section 1981. *Tillery*, 2016 WL 5334673, at *8 ("Even when viewed as favorably as possible for Tillery, the evidence in this record does not support a finding that defendant's reason for firing plaintiff was a pretext or that plaintiff's age or race played any part in the decision.").

In sum, Plaintiff has not demonstrated a genuine dispute of material of fact as to whether she was performing up to ExxonMobil's legitimate expectations, and therefore fails to demonstrate that she meets the third element of the *McDonnell Douglas* framework.[2]

### c. Fourth Element: Termination Giving Rise to Inference of Discrimination

Plaintiff also fails to demonstrate a genuine dispute of material fact with respect to the fourth element of her *prima facie* case. Plaintiff has not put forth any evidence demonstrating a genuine dispute of fact to suggest that discrimination can be inferred from the circumstances surrounding her termination. There is no evidence that any of Plaintiff's managers were motivated by discriminatory animus, especially given that multiple individuals attempted to help her improve her performance for years prior to her termination. Plaintiff has not pointed to any statements or actions by her supervisors that concern her race, national origin, or age. Two of Plaintiff's internal evaluation comments were made by African-American attorneys. Moreover, while Plaintiff alleges that other employees were treated more favorably, she has not put forth any evidence to support that theory that would be admissible at trial.

#### i. Plaintiff's purported comparators are inadequate under Title VII and Section 1981

Plaintiff claims that twelve individuals, mostly paralegals, from various sections and of various ages, races, and national origin, were treated more favorably because they were not

---

[2] In addressing the issue of pretext, below, the Court provides additional details about the four pieces of evidence upon which Plaintiff relies. This purported evidence is relevant to Plaintiff's argument for why she satisfies the third element, along with Plaintiff's argument for why ExxonMobil's proffered reason for her termination is a pretext for discrimination.

"scrutinized" in the same manner or to the same extent that she was. (*See* Bart-Williams Dep. 256:12-269:22). Plaintiff provides no additional information regarding how these employees were "similarly situated," and she even testified that she knew very little about each individual's level of performance at ExxonMobil. (*See id.*) Moreover, her class of proposed comparators is too broad. Many of these individuals worked in different areas of the law department or for different supervisors. (*See* Bart-Williams Dep. 265:3-6 (testifying that Sharon Timmons worked in a different department); *id.* at 267:12-19 (stating that Kathleen Crabtree was "with the Research and Engineering group"); *id.* at 268:17-269:5 (stating that Liliya Petrus was a contractor "from a different organization"); *see also* Johnson Decl. ¶¶ 32-33 (noting that Austin Shinohara and Lee Bishop did not report to Doug Neagli). Consequently, Plaintiff has not met the Fourth Circuit's requirement that comparators be similar "in all relevant respects." *See Taylor*, 2013 WL 487042, at *6. Notably, two of the highest-ranked paralegals, with respect to performance, in Plaintiff's department were both African-American women, ages 42 and 52 at the time of Plaintiff's termination. (Johnson Decl. ¶¶ 26-27).

Finally, with respect to potential comparators Lee Bishop (white) and Austin Shinohara (Asian), these individuals actually undercut Plaintiff's race, sex, and national origin discrimination claims. Mr. Bishop and Mr. Shinohara were *not* similarly situated to Plaintiff, as neither individual reported to Doug Neagli, whom Plaintiff identifies as the primary decision maker for purposes of her discrimination claims. (Johnson Decl. ¶¶ 32-33). Nonetheless, the fact that two non-African-American men were also placed on PIPs further goes against Plaintiff's argument. *See, e.g., Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511-12 (4th Cir. 1993) (affirming the dismissal of a discrimination claim based on evidence that white employees were disciplined similarly to the African-American plaintiff); *Bintliff-Ritchie v. Am. Reinsurance Co.*,

No. 05-cv-3802, 2007 WL 556895, at *9 (D.N.J. Feb. 15, 2007) (finding "evidence that two male employees in her department were dismissed at the same time" as the female plaintiff undermined her claim of sex discrimination), *aff'd*, 285 F. App'x 940 (3d Cir. 2008).

### ii. Plaintiff's comparators for ADEA purposes are similarly inadequate

With respect to her age discrimination claims, Plaintiff must demonstrate an genuine dispute of fact on whether she was supplanted by a substantially younger individual. *Sneed v. Strayer Univ.*, No. 1:15-CV-0004-GBL-IDD, 2016 WL 1023311, at *3 (E.D. Va. Mar. 8, 2016). Plaintiff is precluded from meeting this element of her claim because she was not replaced - the Downstream Law Department has not employed any new paralegals since Plaintiff was terminated. (Johnson Decl. ¶ 37).

Moreover, the majority of Plaintiff's comparators are also within the ADEA's protected class of individuals - age 40 and older - at the time of her termination. Specifically, ten of the twelve individuals Plaintiff identified in her Complaint were 40 or older at the time of her discharge, six of those ten were over 50 years old. (*See* Johnson Decl. ¶¶ 12-36). One employee—Sara Shannon Russell—was 57 years old. (*Id.* ¶ 25). Consequently, Plaintiff fails to state a *prima facie* ADEA claim because the requisite inference of age discrimination cannot be drawn from a comparison with "insignificantly younger" individuals. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *see also id.* at 312 (stating that the replacement of a 68-year-old by a 65-year-old would be "very thin evidence" on which to find a *prima facie* case).

One of the remaining two individuals was 38 years old at the time of Plaintiff's termination. (Johnson Decl. ¶ 24). The other individual, Liliya Petrus, was an independent contractor and was not employed by ExxonMobil. (*Id.* ¶ 35). ExxonMobil states that it lacks

knowledge regarding Ms. Petrus' age, current employment status, and demographic information. (Dkt. 14 at 23).

Accordingly, because Plaintiff cannot state a *prima facie* case on any count, her claims fail as a matter of law. The Court GRANTS Defendant's Motion for Summary Judgment because, with respect to all of her claims, Plaintiff has failed to demonstrate a genuine dispute of fact regarding a *prima facie* case of discrimination under the *McDonnell Douglas* burden-shifting framework.

### 3. Legitimate, Nondiscriminatory Reasons for ExxonMobil's Actions

The Court GRANTS Defendant's Motion for Summary Judgment because Defendant has articulated legitimate, nondiscriminatory reasons for terminating the employment relationship and Plaintiff has failed to demonstrate a genuine dispute of fact on the issue of pretext. Assuming, *arguendo*, that Plaintiff established a *prima facie* case of employment discrimination, the Court holds that Plaintiff nonetheless fails to demonstrate a genuine dispute of fact that Defendant's legitimate, nondiscriminatory reasons for termination were a pretext for discrimination.

Under the *McDonnell Douglas* framework, establishing a *prima facie* case shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for an adverse employment decision. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). At this stage of the burden-shifting test, a defendant's burden "is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks and citations omitted). If the employer submits a legitimate nondiscriminatory reason, then the ultimate burden shifts back to the plaintiff to demonstrate

"that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (quoting *Burdine*, 450 U.S. at 253). "[P]laintiff must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason . . . ." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (citing *Reeves*, 530 U.S. at 143, 148–49).

The Court holds that ExxonMobil has met its burden to offer legitimate, nondiscriminatory reasons for terminating Plaintiff's employment. There is a documented record of Plaintiff's supervisors' impressions of her poor performance, and the decision to terminate the employment relationship was made after a lengthy performance review process. ExxonMobil also has articulated legitimate, nondiscriminatory reasons for the other actions that Plaintiff challenges, which the Court has already determined do not qualify as adverse employment actions. With respect to her transfer from the Fuels Marketing Section to the Lubes Section in 2011, Plaintiff testified that ExxonMobil's divestment from retail stations and gas stations across the country had an impact on the work in the law department. (Bart-Williams Dep. 65:12-66:21). Doug Neagli similarly testified that Plaintiff's work performance was deteriorating, (Neagli Dep. 47:3-21), and that the transition of Plaintiff's work was not out of the ordinary (*id.* at 43:1-20). Moreover, the nondiscriminatory reason for providing Plaintiff with ongoing performance feedback and counseling is readily apparent — her supervisors wanted her performance to improve and succeed. Plaintiff may disagree with ExxonMobil's reasons for termination, but mere disagreement is not evidence of discrimination under Fourth Circuit law. *See DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). An employer does not need to prove that its stated reason was "wise, fair, or even correct, ultimately, so long as it truly was the reason for the

plaintiff's termination." *Id.* Importantly, a court must not "sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *Id.* Thus, Plaintiff cannot substitute her own judgment about her job performance.

Because ExxonMobil has proffered legitimate nondiscriminatory reasons for terminating Plaintiff, the burden shifts back to the Plaintiff to demonstrate a genuine dispute of material fact that ExxonMobil's stated reasons for termination were a pretext for discrimination.

### 4. Pretext for Discrimination

The Court GRANTS Defendant's Motion for Summary Judgment because Plaintiff has failed to demonstrate a genuine dispute of material fact for trial that ExxonMobil's reasons for termination were a pretext for discrimination.

In the final stage of the *McDonnell Douglas* burden shifting test, the plaintiff's ultimate burden toward demonstrating pretext is evaluated under a two-part approach. *Holland*, 487 F.3d at 218. First, Plaintiff must demonstrate a genuine dispute of material fact for trial regarding whether the proffered reason was false, and second, Plaintiff must demonstrate a genuine dispute of material fact regarding whether the alleged form of discrimination was the real reason for termination. *See id.*

In *Reeves*, the Supreme Court noted that "the factfinder's rejection of the employer's legitimate, nondiscriminatory reason . . . does not *compel* judgment for the plaintiff. *Reeves*, 530 U.S. at 146 (citing *St. Mary's Honor Ctr.*, 509 U.S. at 511). The *Reeves* Court also noted that "[t]he ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's [alleged] reason is correct." *Reeves*, 530 U.S. at 146-47. The *Reeves*

Court further cautioned that judgment as a matter of law may be appropriate if a "plaintiff created only a weak issue of fact as to whether the employer's reasons were untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 148. A key factor for courts to consider is "the probative value of the proof that the employer's explanation is false." *Holland*, 487 F.3d at 215 (citing *Reeves*, 530 U.S. at 149). Accordingly, a plaintiff may not simply allege that the employer's stated reasons were inaccurate without also tethering (or enabling the court to tether) the employer's decision to the discriminatory reasons. *Ramos*, 963 F. Supp. 2d at 525. A plaintiff must first undercut the employer's stated reasons and also demonstrate a genuine issue of fact for trial through evidence or through an inference that the improper discriminatory motivation was the real reason. *Id.*

Here, Plaintiff's opposition brief repeatedly highlights four pieces of "evidence" that she claims justify a jury trial. First, she argues that emails thanking her for her work and stating that she satisfactorily completed an assignment are evidence that she was meeting her employer's expectations, thereby rendering her supervisors' assessment of her performance false. Second, Plaintiff contends that attorney Frank Giampa was pressured to provide her with a negative review. Third, Plaintiff maintains that she was "destined for failure" for two reasons. The first reason is that an email sent by ExxonMobil General Counsel Judith Glaubig states: "Are we not causing problems for ourselves assigning Iris an office? I know she [*i.e.*, Plaintiff] will say that she relied on that as an indication it was ok for her to move." (Dkt. 22-2). The second reason stems from an alleged statement by Dara Behan that predated the conclusion of Plaintiff's PIP, and involved Plaintiff's non-relocation to Texas. Fourth, Plaintiff contends that her performance evaluations were fabricated based on a statement she described in her deposition—attributed to outside counsel Don Fullerton—which she believes contradicts a separate comment he made a

year prior about a certain project. The Court holds that this purported evidence fails to demonstrate a genuine dispute of material fact for trial with respect to pretext.

Plaintiff's supervisors in the Downstream Law Department at various times included Jo Ann Murphy, Doug Neagli, Kelly Scoffield, and Noreen Tama. While Plaintiff did complete certain assignments for external business line clients and Mr. Fullerton, who was not an ExxonMobil employee, Plaintiff worked primarily for the attorneys in the Downstream Law Department. These attorneys were solely responsible for evaluating and managing her performance. Thus, for purposes of determining whether Plaintiff's supervisors found her performance deficient, it is only Plaintiff's supervisors' opinions that matter. *See, e.g.*, *DeJarnette*, 133 F.3d at 299; *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 235 (4th Cir. 1991); *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980). The opinions of coworkers and third parties, to the extent that they are not decision makers, are irrelevant. *DeJarnette*, 133 F.3d at 299; *Evans*, 80 F.3d at 960–61; *Smith*, 618 F.2d at 1067.

Notwithstanding Fourth Circuit law, Plaintiff claims that she received positive feedback from Mr. Fullerton and a single client outside of the Downstream Law Department that should cast doubt on the veracity of her supervisors' assessments. In support of this argument, Plaintiff cites one email from a business line client, Stacy Holland, who thanked Plaintiff for her contribution to a project. (Dkt. 22-16). She also refers to hearsay found in an email from Dara Behan, without any context, stating that Mr. Fullerton felt Plaintiff met expectations. (Dkt. 22-8). Additionally, Plaintiff cites an unauthenticated document that she purportedly received from Mr. Fullerton that compliments her performance. (Dkt. 22-6).

With respect to the email from Ms. Holland, Plaintiff offers no evidence to support the extrapolation of a single expression of gratitude to her performance; this fails to show that she was meeting her employer's expectations. Furthermore, as someone who is not employed in Plaintiff's department, Ms. Holland's feedback is irrelevant. Ms. Holland is not Plaintiff's supervisor and Ms. Holland did not write Plaintiff's performance evaluation. *See DeJarnette*, 133 F.3d at 299. Moreover, it is clear from the record that Ms. Holland's feedback was connected to real estate work that Plaintiff performed with Mr. Fullerton, and it is undisputed that Plaintiff received positive feedback in that category but struggled in other critical areas of her work. Accordingly, Ms. Holland's comment is wholly insufficient to demonstrate a genuine dispute of fact for trial as to Plaintiff's supervisors' determination that Plaintiff's overall performance, especially on non-real estate matters, did not meet expectations.

The same holding is true with regard to Mr. Fullerton's purported feedback. First, Plaintiff offers no context for the hearsay contained in Ms. Behan's email. Second, Plaintiff's Exhibit 16, which contains the alleged praise from Mr. Fullerton, is unauthenticated, unsigned, and is inadmissible. ExxonMobil did not identify or produce this document in discovery, Plaintiff did not authenticate it through any of the witnesses that she deposed, and the author of the document has not attested to its validity. Also, Mr. Fullerton is not an ExxonMobil employee and was not a decision maker with respect to Plaintiff's termination, or for her employment evaluations. Lastly, the purported input form is dated March 2012, which was shortly after Plaintiff was reassigned from the Fuels Marketing Section to the Lubricants and Petroleum Specialties Section. As previously mentioned, the record is clear that when Plaintiff worked in the Fuels Marketing Section from 2006-2011, she received generally positive feedback.

Turning to feedback from within her department, Plaintiff cites a single email containing hearsay from attorney Frank Giampa stating that a memorandum she submitted was well written and thorough. (Dkt. 22-14). Plaintiff again offers no context whatsoever for the underlying project, nor does she explain why Mr. Giampa's comment about a single project should cast doubt on the veracity of the opinions of Doug Neagli, Jo Ann Murphy, Noreen Tama, Kelly Scoffield, Sensimone Williams, Linda Fannin, and others about Plaintiff's performance. One positive email does not demonstrate that ExxonMobil was satisfied with Plaintiff's performance as a whole, and it fails to raise a genuine dispute of fact with respect to the issue of whether Plaintiff met ExxonMobil's legitimate expectations at the time of her termination. *See Ramos*, 963 F. Supp. 2d at 523. Moreover, isolated instances of positive feedback "are merely evidence of 'generally adequate performance'—rather than challenges to the specific reason for [her] discharge" and "they are insufficient to demonstrate pretext." *Brown v. Siemens Healthcare Diagnostics, Inc.*, 2012 WL 3136457, *8 (D. Md. July 31, 2012) (citing *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 401 (7th Cir. 1992).

While Plaintiff uses the aforementioned emails and positive comments to show a genuine dispute of material fact regarding whether her performance was satisfactory, complaints about an employee's performance are still legitimate, nondiscriminatory reasons for an employee's termination notwithstanding the fact that the employee received positive feedback at some point. *See, e.g., Brown*, 2012 WL 3136457, at *8 ("even where an employee has created a dispute of fact regarding the satisfactory nature of his performance at the *prima facie* stage, courts have still concluded that an employer may rely on those complaints to justify the employee's termination"); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 766 n.1 (4th Cir. 2003) (upholding a district court's grant of summary judgment to an employer based on the legitimate,

nondiscriminatory reason of inadequate performance although the employee demonstrated that her performance was satisfactory for purposes of the *prima facie* showing). "[U]nless [Plaintiff] attacks the specific reason given for a termination, a plaintiff who stresses evidence of satisfactory performance is simply challenging the wisdom of the employer's decision, which the courts have consistently refused to review." *Brown*, 2012 WL 3136457 at *9 (citing *Anderson*, 965 F.2d at 403, and *DeJarnette*, 133 F.3d at 299). Accordingly, even if Plaintiff could rely on isolated positive feedback to demonstrate that her performance was satisfactory, the same evidence does not create a genuine dispute of fact for trial as to pretext if Plaintiff cannot attack the specific reason for her termination—her supervisors' view that she performed poorly relative to her peers. *See id.* ("To show pretext, it does not generally help for the plaintiff to repeat the proof that his job performance was generally satisfactory.")

On this point, the Fourth Circuit's decision in *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846 (4th Cir. 2001), is illustrative. In *Sears*, the Fourth Circuit held that "when a company, at different times, gives differently and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual." *Id.* at 853. The plaintiff in *Sears*, a Mexican-American, inquired regarding a loss prevention agent job at a Sears Department Store in North Carolina. *Id.* at 847–48. After numerous attempts at applying, interviewing, and visiting the store, the plaintiff filed an EEOC complaint and also subsequently filed a complaint in federal district court, alleging discrimination based on his national origin. *Id.* The district court granted the defendant employer's motion for summary judgment. *Id.* at 851. On appeal, the Fourth Circuit agreed with the plaintiff's argument that the defendant's inconsistent statements concerning why he was not hired constituted evidence of pretext. *Id.* at 852. The Court concluded that there was sufficient

evidence from which a trier of fact could determine that the defendant's "asserted justification was false," and probative of pretext. *Id.* at 852–53.

Here, however, Plaintiff has not presented sufficient evidence to create a genuine dispute of material fact on the issue of pretext. There is no evidence in the record that ExxonMobil's reasons for termination were false, inconsistent, or fabricated in order to cover up an improper discriminatory purpose. Plaintiff has failed to present sufficient evidence from which factfinder could find that she was terminated for discriminatory reasons.

Plaintiff's argument that "a jury may not necessarily agree with [ExxonMobil] that she was performing poorly" is similarly inapposite. (Dkt. 22 at 220). The inquiry is not whether the Court agrees with ExxonMobil's decision to terminate Plaintiff's employment. Instead, the pertinent questions are whether the decision makers at ExxonMobil believed that Plaintiff's performance was deficient, and whether Plaintiff has demonstrated a genuine dispute of fact for trial as to pretext. *See DeJarnette*, 133 F.3d at 299.

Plaintiff also contends that attorney Frank Giampa told her he was pressured by ExxonMobil to provide Plaintiff a negative performance review. (Dkt. 22 at 4, 14, 20, 22). However, Plaintiff fails to support this argument with any evidence. Plaintiff did not depose Mr. Giampa or solicit or submit a declaration from him. Instead, Plaintiff offers her own affidavit to try to introduce inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802.

Plaintiff attempts to present Mr. Giampa's alleged statement as non-hearsay under Federal Rule of Evidence 801(d)(2)(D), but Plaintiff's argument on this issue is unavailing. Under Rule 801(d)(2)(D), an out-of-court statement is admissible if it is offered against an opposing party and the statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Plaintiff has

failed to provide any evidence that Mr. Giampa, who never acted as Plaintiff's supervisor, possessed authority over her continued employment. Accordingly, his alleged statement does not qualify under this rule. *See Hassman v. Caldera*, 229 F.3d 1142 (4th Cir. 2000) (table decision) ("In order for a statement to constitute a party admission, . . . the proponent for admission must produce independent evidence showing that the scope of the declarant's authority included the matters discussed in the alleged conversation.") (citing *Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co.*, 951 F.2d 613, 619–20 (4th Cir. 1991)).

Moreover, Plaintiff inappropriately cites as "evidence" of pretext a November 2014 email from Judi Glaubig expressing concern about assigning Plaintiff an office in Texas, and an alleged statement by Dara Behan about the possibility of Plaintiff's relocation to Texas. Ms. Glaubig's email does not contain evidence of discriminatory animus, and nothing about her concern demonstrates that the stated reason for Plaintiff's termination—her poor performance — was pretextual. Plaintiff's allegation that Ms. Behan exhibited discriminatory animus toward Plaintiff by stating in the fall of 2014 that the company's relocation to Houston "did not apply" to Plaintiff is also immaterial. These allegations simply have no bearing on any material fact in this case. Courts in the Fourth Circuit have held that "[m]ere assertions of questionable timing, 'in and of themselves are simply insufficient to counter unrebutted evidence of legitimate, nondiscriminatory reasons for' being fired." *Kothe v. Cont'l Teves, Inc.*, 461 F. Supp. 2d 466, 477 (W.D. Va. 2006) (citing *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 722 (4th Cir. 2002)).

Plaintiff's final piece of evidence is the alleged fabrication of her annual performance evaluations. The document that Plaintiff identifies an email from Ms. Behan summarizing feedback on assignments Plaintiff completed. (Dkt 22-8). Plaintiff highlights Ms. Behan's

summary of Mr. Fullerton's statement that "Iris met his expectations" on an particular assignment. (Dkt. 22 at 5). Plaintiff juxtaposes this feedback with a statement in one of Plaintiff's EADS forms that suggests Mr. Fullerton echoed Noreen Tama's comment that Plaintiff's Asset Management work product was deficient. (Dkt. 22-7).

ExxonMobil does not dispute that Plaintiff received some degree of positive feedback from external clients and Mr. Fullerton during the 2013-2014 review period. It is also undisputed that Plaintiff received a significant amount of negative feedback during the same timeframe. The fact that Mr. Fullerton told Ms. Behan in July 2013 that "Iris met his expectations" does not demonstrate that an annual evaluation prepared approximately one year later is fabricated.

This Court is not tasked with "appraising [ExxonMobil's] appraisal" of Plaintiff's performance. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). The Court's "sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory." *Id.* (noting that a plaintiff's "extensive efforts to rebut [her employer's] assessment of her performance simply do not provide a legally sufficient basis" to conclude that her termination was discriminatory).

Plaintiff provides no legal support for her argument that her allegation regarding the "falsification" of her EADS form can create a genuine dispute of material fact for trial. On this regard, Plaintiff's most prominent argument is premised on the Fourth Circuit's decision in *DeJarnette*. (*See* Dkt. 22 at 22). However, *DeJarnette* held that a district court should have granted judgment as a matter of law in the employer's favor because the plaintiff's primary evidence of pretext was her own self-assessment of her performance and the irrelevant opinions of her coworkers. 133 F.3d at 299. The Fourth Circuit held that "[t]o the extent that the

proffered opinion testimony has any relevance, it fails to prove as a reasonable probability that [the evaluations prepared by the plaintiff's employer] were either false or pretextual for discrimination." *Id.*

Because Plaintiff has failed to demonstrate a genuine dispute of fact that ExxonMobil's proffered reasons for termination were a pretext for discrimination, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's discrimination claims.

### 5. ADEA Claim

The Court GRANTS Defendant's Motion for Summary Judgment because Plaintiff has failed to demonstrate a genuine dispute of fact concerning "but for" causation with respect to her ADEA claim.

To avoid summary judgment on a claim under the ADEA, a plaintiff must demonstrate a genuine of dispute of fact for trial that "but for" her employer's motive to discriminate against her based on her age, she would not have suffered an adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Here, Plaintiff has not presented any evidence to suggest age-based discrimination.

Plaintiff relies on the existence of an alleged unwritten "policy" at ExxonMobil to terminate employees age 55 and older. At her deposition, Plaintiff testified that she had "heard about 55-year-olds within the company being forced to retire, even, you know, asked to retire, and people who did not want to retire were not moved to Houston." (Bart-Williams Dep. 242:15-243:6). Plaintiff's unsupported testimony is not sufficient to support her claim.

First, there are hearsay concerns raised by Plaintiff's reliance on anonymous sources from whom she "heard" about unnamed people being forced to retire. Second, Plaintiff's reference to an unwritten discriminatory policy carries is not dispositive; the Fourth Circuit has

rejected this argument. *See Rhymer v. Yokohama Tire Corp.*, 106 F.3d 391 (4th Cir. 1997) (unpublished table decision). In *Rhymer*, the plaintiff offered an affidavit that provided: "Yokohama employees have commented to me that they have heard Mr. Akashi state that perhaps older workers should be replaced because they would not change their ways." *Id.* at *4. The Fourth Circuit rejected the affidavit, holding that such evidence lacks probative value unless it is tied to a "particular person, employment decision, or pattern of decisionmaking." *Id.* (quoting *Henson v. Liggett Grp., Inc.*, 61 F.3d 270, 276 (4th Cir. 1995)).

Here, in a similar manner, there is no nexus between any such statements and ExxonMobil's legitimate decision to terminate Plaintiff's employment. Moreover, Plaintiff's attempt to present her termination as a one-person reduction-in-force, or "mini- RIF," also fails, as does her reliance on *Guessous v. Fairview Property Investments*, LLC, 828 F.3d 208 (4th Cir. 2016). (Dkt. 22 at 19 n.98). In *Guessous*, the defendant expressly argued that it terminated the plaintiff's employment because it lacked enough work to retain the plaintiff with a full-time position. 828 F.3d at 219-20. Here, unlike in *Guessous*, ExxonMobil reassigned Plaintiff from the Fuels Marketing Section to the Lubricants and Petroleum Specialties Section in December 2011 in part because of the decline of available real estate work. ExxonMobil has never argued that Plaintiff was terminated because of a lack of work. Instead, Plaintiff was terminated because of poor performance. Consequently, Plaintiff cannot rely on allegations regarding younger replacements to support her age claim.

Moreover, Plaintiff has not provided any evidence to indicate that her responsibilities were "absorbed" or "consumed" by younger employees. Plaintiff contends only that "4 of the 10 paralegals transferred to Texas were 16-20 years younger than her." (Dkt. 22 at 19). Such an assertion necessarily means that six out of the ten paralegals who were transferred were *not*

substantially younger than Plaintiff. *Id.* Even under Plaintiff's allegations, half of the paralegals in the Downstream Law Department are age fifty or older, and all of the paralegals are within the ADEA's protected class of individuals age forty and older. This is "very thin evidence" of age discrimination, and it is not sufficient to create a genuine issue of fact regarding Plaintiff's burden under the ADEA. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996); *see also Grosjean v. First Energy Corp.*, 349 F.3d 332, 338 (6th Cir. 2003) ("The overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough to make out the fourth part of the age discrimination *prima facie* case."); *Robinson v. Greenwood Cty.*, No. CIV.A. 8:10-02192, 2011 WL 6257125, at *4 (D.S.C. Nov. 22, 2011) (holding that a replacement who was 49 years old was not "substantially younger" than the 56-year-old plaintiff), *report and recommendation adopted by* No. CIV.A. 8:10-02192-TM, 2011 WL 6217601 (D.S.C. Dec. 14, 2011). Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment because Plaintiff has not demonstrated a genuine dispute of material fact on "but for" causation with respect to her ADEA claim.

### 6. Plaintiff's Retaliation Claims

The Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's retaliation claims because Plaintiff has failed to demonstrate a genuine dispute of fact for trial concerning her purported protected activity as the "but for" cause of her termination. For her retaliation claim, Plaintiff's evidence must demonstrate that (1) she engaged in protected activity, (2) her employer took an adverse employment action against her, and (3) there is a causal connection between the protected activity and the adverse employment action. *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008). In order to avoid summary judgment on her retaliation claims, Plaintiff must demonstrate a genuine dispute of material fact for trial on the

issue of whether her alleged protected activity was the "but for" cause of her termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

Plaintiff testified during her deposition that the basis for her retaliation claims is the letter that she sent to ExxonMobil's Chairman and CEO in July 2014. (Bart-Williams Dep. 275:7-18). Plaintiff has not put forth any other evidence from which the Court could determine that Plaintiff's letter was the "but for" cause of ExxonMobil's decision to terminate her employment. This is noteworthy because of Plaintiff's documented performance issues—and even her PIP—preceded her letter. Plaintiff's retaliation claims primarily rely on the temporal proximity between her "complaint" and her termination in March 2015. The Fourth Circuit has held, however, that a temporal gap of "more than three months" between an employee's informal complaint and her termination is "too long to establish causation, without more." *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012). Here, because Plaintiff was terminated more than eight months after sending her letter, her reliance on temporal proximity alone is unavailing.

Furthermore, much of the allegedly discriminatory activity that Plaintiff alleges in her Complaint—her reassignment to a different section, increased levels of scrutiny of her performance, her placement on a PIP, occurred before her July 2014 letter to the Chairman Tillerson. As the Fourth Circuit has explained, "the existence of 'gradual adverse actions' before the plaintiff engages in protected activity precludes any inference of retaliation." *Best Med. Int'l, Inc. v. Wells Fargo Bank, N.A.*, 937 F. Supp. 2d 685, 704 (E.D. Va. 2013) (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006)); *see also Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (rejecting a retaliation claim where the employer considered eliminating the plaintiff's position several months prior to any protected activity). Here, in March 2014, at the time she was placed on the PIP, Plaintiff was informed

that a failure to improve her performance could result in termination. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's Retaliation claims, because Plaintiff has failed to demonstrate a genuine dispute of fact concerning that her purported protected activity was the "but for" cause of her termination.

## III. CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment for five reasons. First, Plaintiff's Title VII, ADEA, and Section 1981 claims are statutorily time barred. Second, even if the claims are not time barred, Plaintiff has failed to demonstrate a genuine dispute of material fact for trial regarding a *prima facie* case of discrimination under the familiar burden-shifting framework of *McDonnell Douglas*. Third, Plaintiff has failed to demonstrate a genuine dispute of material fact for trial on whether Defendant's reasons for termination were a pretext for discrimination. Fourth, Plaintiff has not demonstrated a genuine dispute of material fact for trial as to "but for" causation with respect to her ADEA claim. Fifth, with respect to Plaintiff's retaliation claims, Plaintiff has failed to demonstrate a genuine dispute of material fact for trial that her purported protected activity was the "but for" cause of her termination.

Accordingly, it is hereby

**ORDERED** that Defendant ExxonMobil Corporation's Motion for Summary Judgment (Dkt. 13) is **GRANTED.**

**IT IS SO ORDERED.**

ENTERED this 28th day of September, 2017

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia

39